IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PINKTOE TARANTULA LIMITED, *et al.*,<br><br>Debtors. | Case No. 18-10344 (LSS)<br><br>Jointly Administered |
| PINKTOE LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>CHARLOTTE OLYMPIA DELLAL,<br><br>Defendant. | Adv. Pro. No. 20-50597 (LSS) |

## MEMORANDUM

In this adversary proceeding, Pinktoe Liquidation Trust sues Charlotte Olympia
Dellal for breach of her fiduciary duties and to avoid and recover alleged avoidable
transfers.  Dellal has moved to dismiss all claims.  For the reasons set forth below, the
motion is granted, but so is leave to amend.

## Background[1]

Defendant is the namesake behind the Charlotte Olympia brand of women's clothing, originally established in the United Kingdom in 2010.  Defendant founded Pinktoe Tarantula Limited, Desert Blonde Tarantula Limited and Red Rump Tarantula Limited (collectively, "Debtors") in 2013 to expand the Charlotte Olympia brand into the United States.  Defendant served as a director of Debtors from August 15, 2011[2] through 2018; she also served as an officer of Debtors (although the timeframe is not stated).  During her tenure as director, Defendant also served as a director of certain non-debtor affiliates based in the United Kingdom—Charlotte Olympia Holdings Limited and Three14 Limited.

Debtor Pinktoe Tarantula opened a retail store in New York City and entered into a lease ("Lease") with L&M 65th Madison LLC ("Landlord").  Defendant guaranteed the Lease pursuant to that certain Guaranty dated August 18, 2011 ("Guaranty").  Debtor Pinktoe Tarantula made payments of $448,236.03 to Landlord from February 2017 through January, 2018 as detailed in Exhibit A to the Complaint.[3]

The New York store was never profitable.  Defendant failed to close the New York store and Debtors' other stores even though they were unprofitable because Defendant stood

---

[1] As required on a motion to dismiss the facts recited herein are taken from the Complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A court is not required to make findings of fact or conclusions of law on a motion to dismiss under Fed. R. Civ. P. 12, made applicable by Fed. R. Bankr. P. 7012, and I make none.  *See* Fed. R. Civ. P. 52(a)(3) made applicable by Fed. R. Bankr. P. 7052.

[2] The inconsistency between the year of founding and Defendant's service as director (which predates the founding) is not explained, but reconciling the years is not necessary for purposes of this motion.

[3] There is also an inconsistency between the aggregate transfers in the body of the Complaint ($412,416.14) and Exhibit A, which lists transfers totaling $448,236.03.  Again, it is not necessary to reconcile these numbers to rule on the motion.

to benefit personally. Plaintiff alleges that Defendant caused the store to remain open notwithstanding its unprofitability in order to reduce her liability under the Guaranty. Plaintiff also alleges that Defendant gained by bolstering her personal brand at the expense of Debtors and its creditors. Had Defendant not been interested, she would have closed the stores due to their unprofitability or sought more funding from non-debtor affiliates to adequately capitalize the companies. Defendant also caused Debtors to acquire large amounts of inventory from non-Debtor affiliate Three14 Ltd "without sufficient deliberation."

**Procedural Posture**

On February 17, 2018, Debtors each filed petitions for relief under chapter 11.[4] On February 6, 2019, Debtors' Plan of Liquidation ("Plan") was confirmed.[5] The Plan provides for the creation of the Pinktoe Liquidation Trust, which was vested with the right to assert Debtors' litigation claims, including avoidance actions.[6]

Plaintiff commenced this adversary proceeding on May 11, 2020. Count I is a preference claim. In Count I, Plaintiff seeks to avoid the transfers to Landlord during the one-year period prior to the filing of Debtors' bankruptcy petitions. Plaintiff alleges that the transfers enabled both Defendant and Landlord to receive more than they would have if the

---

[4] A.P. 1 (Complaint) ¶ 13. All references to the docket of the above-captioned adversary proceeding will be cited as "A.P." References to the docket of the main bankruptcy case will be cited as "D.I."

[5] Complaint ¶ 14.

[6] *Id.*

payments had not been made and they received payment on the debts paid by the transfers in accordance with the provisions of the Code.[7]

In Count II, Plaintiff alleges Defendant breached fiduciary duties owed to Debtors. While the Complaint does not label the duties breached, Plaintiff alleges that Defendant breached her duties as both an officer and a director in that Defendant: (i) did not act in a manner consistent with Debtors' interests, but instead in bad faith; (ii) failed to meet her obligations under Debtors' respective bylaws; (iii) had conflicts of interest between her role at Debtors and her roles at Three14 Limited and Charlotte Olympia Holdings; (iv) took actions or failed to act in a negligent, grossly negligent, wanton and/or reckless fashion or in bad faith and (v) did not consider or undertake available alternative transactions that would not have jeopardized recovery of creditors or risked Debtors' financial viability.

On July 28, 2020, Defendant filed her Motion to Dismiss and accompanying opening brief together with the Declaration of Marc Casarino.[8]  Plaintiff's answering brief was filed on August 27, 2020 and Defendant's reply brief was filed on September 16, 2020.[9] The matter is ripe for decision.

**Jurisdiction**

Subject matter jurisdiction exists over this adversary proceeding under 28 U.S.C. § 1334.  Plaintiff alleges the adversary proceeding is a core proceeding under 28 U.S.C.

---

[7] Landlord has not been sued in this adversary proceeding.

[8] A.P. 8 (Defendant's Motion to Dismiss Adversary Proceeding); A.P. 8 Ex. 1 (Declaration of Marc Casarino, Esquire in Support of Defendant's Motion to Dismiss the Complaint); A.P. 9 (Brief in Support of Defendant's Motion to Dismiss) ("Opening Br.").

[9] A.P. 14 (Plaintiff's Response in Opposition to Defendant Charlotte Olympia Dellal's Motion to Dismiss) ("Answering Br."); A.P. 15 (Reply Brief in Support of Defendant's Motion to Dismiss) ("Reply Br.").

§ 157(b)(2) but makes no statement whether it agrees to the entry of final orders or judgments by this bankruptcy court.[10]  Accordingly, Plaintiff has waived the right to contest the authority of the bankruptcy court to enter final orders or judgments.[11]  Defendant makes no statement of whether this matter is core or non-core, or any statement regarding consent. Given that I am not entering a final judgment, however, these matters are not implicated.

**Discussion**

### A. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the court will separate the factual and legal elements.  Taking all well-pled facts as true and construing them in the light most favorable to the non-moving party, the court must determine whether there exists a "plausible claim for relief."[12]  A plausible claim for relief is stated where the factual allegations create "a reasonable inference that the defendant is liable for the misconduct alleged."[13]  Plaintiff's allegations must be more than "labels and conclusions" or a "formulaic recitation" of the elements.[14]  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."[15]

---

[10]  Complaint ¶ 19.

[11]  Del. Bankr. L. R. 7008-1.

[12]  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[13]  *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, C.A. No. 14-874-SLR-SRF, 2015 WL 4036951, at *5 (D. Del. July 1, 2015) (citing *Iqbal*, 556 U.S. at 663; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

[14]  *Twombly*, 550 U.S. at 545.

[15]  *Id.*

### B. Count I

In Count I, Plaintiff seeks to avoid and recover (from Defendant) the transfers made

to Landlord on the Lease.  With exceptions that are not relevant, § 547(b) provides:

> The trustee may, based on reasonable due diligence in the circumstances of the
> case and taking into account a party's known or reasonably knowable
> affirmative defenses under subsection (c), avoid any transfer of an interest of
> the debtor in property—
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debt owed by the debtor before
> such transfer was made;
> > (3) made while the debtor was insolvent;
> > (4) made—
> > > (A) on or within 90 days before the date of the filing of the
> petition; or
> > > (B) between ninety days and one year before the date of the filing
> of the petition, if such creditor at the time of such transfer was an insider; and
> > > (5) that enables such creditor to receive more than such creditor would
> receive if—
> > > > (A) the case were a case under chapter 7 of this title;
> > > > (B) the transfer had not been made; and
> > > > (C) such creditor received payment of such debt to the extent
> provided by the provisions of this title.[16]

In order to state a plausible claim for an avoidable transfer at the motion to dismiss stage, a

plaintiff must allege the following "(a) an identification of the nature and amount of each

antecedent debt and (b) an identification of each alleged preference transfer by (i) date [of

the transfer], (ii) name of the debtor/transferor, (iii) name of the transferee and (iv) the

amount of the transfer."[17]

Defendant argues that Plaintiff fails to properly plead a preference claim for several

reasons.  First, Plaintiff does not specify the amount of the antecedent debt.  Second,

---

[16]  11 U.S.C. § 547(b).

[17]  *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*, Case No. 12-13398 (MFW), Adv. No. 14-51079 (MFW), 2016 WL 1599798, at *3 (Bankr. D. Del. 2016) (quoting *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 521–22 (Bankr. D. Del. 2006)).

Plaintiff does not allege that it undertook any due diligence into the merits of its claims or any potential affirmative defenses. Third, Plaintiff ignores a $116,000 security deposit made pursuant to the Lease which means that Plaintiff cannot establish that the transfers were made for Defendant's benefit nor that she would have received more than she would have if the payments had not been made. Fourth, it is evident from the face of the Complaint that Defendant has ordinary course, contemporaneous exchange and new value defenses to the transfers. I will take these in turn.

### 1. *Plaintiff adequately pleads antecedent debt*

For its allegations of antecedent debt, Plaintiff cites to paragraphs 6, 24–26, 53 and Exhibit A of the Complaint, which Plaintiff says allege the existence and amount of the antecedent debt. Reading the Complaint in the light most favorable to Plaintiff, Plaintiff adequately alleges that the transfers are the payments made under the Lease and for the benefit of Defendant as guarantor under the Guaranty. Both the Lease and the Guaranty can satisfy the antecedent debt requirement. To the extent Defendant contends that the Complaint does not track each payment to a payment owed under the Lease, Defendant attached the Lease to the Casarino Declaration, which sets out a schedule of rents owed.[18] Further, Exhibit A sets out the date and amount of each transfer. These allegations are sufficient to put Defendant on notice of the antecedent debt.

Count I will not be dismissed on this ground.

### 2. *The Complaint lacks any allegations of due diligence*

The Small Business Reorganization Act of 2019 ("Act") amended 11 U.S.C.

---

[18] Casarino Decl. Ex. 1, Rider at 1. Plaintiff does not concede that the document attached to the Casarino Declaration is authentic. Solely for purposes of the point here, I assume it is.

§ 547(b), imposing a new due diligence requirement on a trustee.[19]  Defendant moved to
dismiss contending Plaintiff was required, but failed, to allege its compliance with that
requirement.  Plaintiff argues that because the bankruptcy case was filed on February 17,
2018, before § 547(b) was amended, the Act is not applicable to this adversary proceeding.
Defendant counters that the adversary proceeding was commenced on May 11, 2020 when
the amendment was in effect.  I agree with Defendant.  The Act specifically provides that
the amendments will take effect 180 days after enactment.[20]  As the President signed the Act
on August 23, 2019, it took effect on February 19, 2020[21] or approximately three months
prior to the commencement of this adversary proceeding.[22]

Defendant correctly points out that the Complaint contains no explicit allegations
responsive to this new requirement.  Defendant maintains the amendment establishes a
pleading requirement, and thus an element of a prima facie preference action.  Plaintiff
argues that the due diligence requirement is an affirmative defense, which it is not required
to plead around.  Alternatively, Plaintiff argues that it did take into account potential
§ 547(c) defenses and determined that they "were not applicable given the irregular timing
of the transfers, the fact that the Defendant (as opposed to Landlord) supplied no new value,

---

[19] Pub. L. No. 116-54 § 3(a).

[20] Pub. L. No. 116-54 § 5, Effective Date ("This Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act.").

[21] 5 Collier on Bankruptcy ¶ 547.02A (16th 2023).

[22] If the adversary proceeding had been pending prior to the effective date of the Act, arguably the Act would not apply.  *See id.* (recognizing the due diligence requirement "may apply only to preference litigation filed on or after February 19, 2020).

and the non-contemporaneous nature of the purported new value."[23] Finally, Plaintiff argues that its diligence is evident on the face of the Complaint.

Most courts that have confronted the issue of whether the due diligence requirement is an element of a preference cause of action or an affirmative defense have skillfully avoided the determination.[24] As these courts point out, whether the amendment creates a new element or not, the requirement is innately flexible in that it requires "reasonable due diligence in the circumstances of the case."[25] Some courts have noted that the Code

---

[23] Reply Br. 8.

[24] *Ctr. City Healthcare, LLC v. McKesson Plasma & Biologics LLC (In re Ctr. City Healthcare, LLC)*, 641 B.R. 793, 802 (Bankr. D. Del. 2022) (finding it unnecessary to resolve the issue because the plaintiff alleged debtors conducted an analysis of transfers made in the avoidance period, including defenses, sent demand letters to defendants inviting an exchange of information regarding defenses and received no responses); *Insys Therapeutics, Inc. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*, Case No. 19-11292 (JTD), Adv. No. 21-505339 (JTD), 2021 WL 5016127, *3 (Bankr. D. Del. Oct 28, 2021) (declining to decide the issue because (i) complaint generally met the Rule 8 pleading standard and (ii) plaintiff alleged he sent a letter to defendant demanding return of the transfers and inviting defendant to advise of any defenses, which were reviewed if presented and (iii) plaintiff alleged he reviewed debtors' books and records); *Miller v. Nelson (In re Art Inst. Of Phila. LLC)*, Case No. 18-11535 (CTG), Adv. No. 20-50627 (CTG), 2022 WL 18401591, * 20 (Bankr. D. Del. Jan. 12, 2022) (finding it unnecessary to resolve the issue because court was dismissing the complaint on other grounds); *Robichaux v. Moses H. Cone Mem'l Hosp. Operating Corp. (In re Randolph Hosp., Inc.)*, 644 B.R. 446, 462 (Bankr. M.D.N.C. 2022) (concluding due diligence adequately pled when plaintiff alleged that he reviewed books and records, evaluated reasonably knowable defenses, attached to the complaint the wire and check records of transfers and the underlying contract, and described the contractual relationship between debtor and defendant); *Faulkner v. Earl Owen Co. (In re Reagor-Dykes Motors, LP)*, Case No. 18-50214-RLJ-11, Adv. No. 20-05038, 2021 WL 2546664, at *5 (Bankr. N.D. Tex. June 21, 2021) (finding it unnecessary to resolve issue but observing that if due diligence was performed it was not reflected in the complaint because of the lack of context surrounding the transfers); *Sommers v. Anixter, Inc. (In re Trailhead Engineering LLC)*, Case No. 18-32414, Adv. No. 20-3094, 2020 WL 7501938, * 7 (Bankr. S.D. Tex. Dec. 21, 2020) (concluding any pleading requirement was met when the complaint demonstrated that plaintiff reviewed debtor's books and records, invoices relating to the specific transfer, correspondence between the parties and the underlying contract and related the relationships between the debtor and defendant).

[25] *In re Trailhead Engineering LLC*, 2020 WL 7501938 at* 7 ("a plain reading of the statute references due diligence 'in the circumstances of the case' meaning that a level of discretion is involved.").

provides no assistance in determining what one must show to meet this new requirement.[26] Other courts have noted that a mere recitation of the statute does not meet Rule 8 requirements.[27] And, still other courts have noted that it is beyond doubt that a plaintiff need not plead around affirmative defenses.[28]

*ECS Refining*[29] appears to be the only reported decision squarely addressing the issue. The *ECS* Court thoughtfully examines Supreme Court guidance on when a condition precedent is an element of a cause of action or an affirmative defense. It also discusses the plain meaning of the statute and the Act's legislative history. But, I am ultimately persuaded by the *ECS* Court's discussion of the structure of the statute itself and its delineated subsections.

Three subsections of § 547 lead me to conclude that the due diligence requirement is an element of a preference claim, not an affirmative defense. First, subsection (b)

---

[26] *See In re Ctr. City Healthcare*, 641 B.R. at 801 ("There is no explanation, in the Code or in the legislative history to the amendment, of what is required to meet the new requirement.").

[27] *Arete Creditors Litig. Trust v. Tricounty Family Medical Care Group, LLC (In re Arete Healthcare, LLC)*, Case No. 19-52578-cag, Adv. No. 21-05079-cag, 2022 WL 362924, at *11 (Bankr. W.D. Tex. Feb. 7, 2022) (dismissing the preference claim on other grounds but stating, "[i]f due diligence is an element, merely paraphrasing the element will not satisfy Rule 8"); *Husted v. Taggart (In re ECS Refining, Inc.)*, 625 B.R. 425, 458 (Bankr. E.D. Cal. 2020) (finding plaintiff's "use of pre-*Iqbal/Twombly* notice style pleadings and a very general nature of the allegations in the [f]irst [a]mended [c]omplaint suggest[ed] a lack of pre-filing due diligence."); *In re Randolph Hosp. Inc.*, 644 B.R. at 462 (acknowledging that the plaintiff did "more than recite the introductory sentence of § 547(b) . . . ."); *In re Insys Therapeutics, Inc.*, 2021 WL 5016127, at *3 (declining to dismiss the complaint on due diligence grounds where the trustee pled "sufficient facts regarding the due diligence he conducted.").

[28] *In re Insys Therapeutics, Inc.*, 2021 WL 5016127 at * 3 (citing *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) ("[A]n affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)."); *In re Art Inst. Of Phila. LLC*, at *19 (citing *Perry v. Merit Sys. Protection Bd.*,137 S. Ct. 1975, 1986 n.9, 198 L.Ed.2d 527 (2017) (plaintiff is not required to "anticipate and negate [a potentially available affirmative defense] in her pleading.").

[29] *In re ECS Refining, Inc.*, 625 B.R. 425.

establishes what transfers may be avoided and lists the five elements a debtor must prove to avoid a transfer as a preference (i.e., a transfer for the benefit of a creditor, for or on account of an antecedent debt, made while the debtor was insolvent, made within 90 days of the filing of the petition, that enables that creditor to receive more than it would in a chapter 7). Second, subsection (c) sets out the transfers that may not be avoided, thus establishing affirmative defenses (e.g., contemporaneous exchange, ordinary courses of business, new value). Third, subsection (g) provides that the trustee/plaintiff has the burden of proving avoidability of a transfer under subsection (b) while the creditor/defendant has the burden of proving the nonavoidability of a transfer under subsection (c). Because the due diligence requirement appears in subsection (b), not (c), I conclude that the due diligence requirement is an element of the claim, or something that must be proven by the trustee.[30] This conclusion, however, does not determine what a plaintiff must plead.

The new due diligence requirement is a condition precedent. Federal Rule of Civil Procedure 9(c), not Federal Rule of Civil Procedure 8, therefore applies. Rule 9(c) provides:

> Conditions Precedent. In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.[31]

The pleading of conditions precedent, therefore, falls outside the *Iqbal* and *Twombly* standard, which governs Rule 8(a).[32] A general allegation that all conditions precedent have

---

[30] *Id.* at 456-47.

[31] Fed. R. Civ. P. 9(c) as applied in adversary proceedings pursuant to Fed. R. Bankr. P. 7009.

[32] *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 111–12 (3d Cir. 2014) (district court erred in applying *Iqbal* and *Twombly* standard to condition precedent).

occurred satisfies this pleading requirement.[33] Here, there is no allegation, general or
otherwise, that Plaintiff performed due diligence. Accordingly, Count I must be dismissed
on this ground.[34] I will, however, grant leave to amend. Plaintiff represents in its reply brief
that it can make such an allegation and, as set forth above, this amendment was enacted
only three months prior to the filing of the adversary proceeding. Under these
circumstances, leave to amend should be granted.

   3.  *The existence of the security deposit and other § 547(c) defenses*

   For the sake of completeness, I will rule on the other two grounds for dismissal.
Defendant moves to dismiss because the Complaint "is silent" regarding a $116,000 security
deposit, which means that Plaintiff cannot meet its burden under § 547(b)(1) and (5). The
alleged existence of a security deposit is a factual issue that may mean that Plaintiff cannot
prove that Defendant would receive more than it would in a chapter 7 as to each transfer.
But, that factual issue cannot be decided at the motion to dismiss stage and certainly would
not protect, in full, $448,236.03 in alleged preferential transfers.

   Defendant's remaining argument is that it has ordinary course, contemporaneous
exchange of new value and subsequent new value defenses and that these defenses "jump
off the page." While it appears there may be some affirmative defenses, they are not clearly

---

[33] *Jean-Pierre v. Schwers*, 682 F. App'x. 145, 147 (3d Cir. 2017) (citing *Hildebrand*, 757 F.3d at 111 and
describing Rule 9(c) as a "modest pleading standard" met by a general allegation that "all conditions
precedent have occurred or have been performed.").

[34] *Walega v. Lackawanna Cnty. Gov't Off.*, Civ. No. 1:21-CV-02006, 2022 WL 19039454, at * 9 (M.D.
Pa. Dec. 12, 2022) (citing *Hildebrand*, 757 F.3d at 1112 for the proposition that "in pleading
conditions precedent, it suffices to allege generally that all conditions precedent have occurred or
been performed," but dismissing complaint because plaintiff did not allege the condition precedent,
"generally or otherwise.").

irrefutable from the face of the Complaint. Such defenses are more appropriately raised in a motion for summary judgment.

Count I will not be dismissed on these grounds.

## C. Count II – Breach of Fiduciary Duties

In Count II, Plaintiff alleges Defendant owed fiduciary duties to Debtor and breached those duties. Plaintiff does not label the duties, but alleges Defendant acted in bad faith, had conflicts of interest and that her actions or inactions constituted willful and wanton conduct, were negligent, grossly negligent and wantonly reckless.

Defendant moves to dismiss Count II because: (i) Plaintiff failed to allege facts demonstrating a breach of the duty of care; (ii) Plaintiff failed to allege a breach of the duty of loyalty; (iii) the exculpatory provisions in Debtors' certificates of incorporation preclude a duty of care claim, and (iv) Plaintiff did not plead insolvency at the relevant times.

Plaintiff responds that (i) exculpation is an affirmative defense and should not be decided on a motion to dismiss; (ii) Defendant is not exculpated for intentional misconduct, lack of good faith, gross negligence and knowing violations of law, which have been alleged; (iii) the complaint alleges self-interested transactions that constitute a breach of the duty of loyalty; and (iv) insolvency is a fact-based determination not appropriate on a motion to dismiss, but, in any event, insolvency has been pled. In the alternative, Plaintiff asks for leave to amend.

### 1. The exculpatory provisions in the certificates of incorporation do not require dismissal at the pleading stage

Attached to the Casarino Declaration are authenticated copies of the Certificates of Incorporation for each of Desert Blonde Tarantula Limited, Pinktoe Tarantula Limited and

Red Rump Tarantula Ltd.[35] Each certificate contains an exculpatory provision with the

same language:

> No director shall be liable to the corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except with respect to (1) a breach of the director's duty of loyalty to the corporation or its stockholders, (2) acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (3) liability under Section 174 of the Delaware General Corporation Law or (4) a transaction from which the director derived an improper personal benefit, it being the intention of the foregoing provision to eliminate the liability of corporation's directors to the corporation or its stockholders to the fullest extent permitted by Section 102(b)(7) of the Delaware General Corporation Law, as amended from time to time.[36]

Based on these exculpatory provisions, Defendant contends that any duty of care claims

should be dismissed. Plaintiff counters that the court may not consider the exculpatory

provisions because they were not pled in the Complaint. Plaintiff further contends that

exculpation is in the nature of an affirmative defense and thus should not be considered on a

motion to dismiss.

Even if I consider the certificates of incorporation, I will not dismiss Count II on this

ground.[37] Plaintiff is correct that an exculpatory provision is in the nature of an affirmative

defense.[38] It is generally not proper to adjudicate the viability of an affirmative defense on a

---

[35] Casarino Decl. Exs. 2–4.

[36] Casarino Decl. Ex. 2 at 4, Ex. 3 at 4, Ex. 4 at 4.

[37] A court can consider public records that are readily ascertainable. *Spizz v. Eluz (In re Ampal-Am. Israel Corp.)*, 543 B.R. 464, 472–73 (Bankr. S.D.N.Y. 2016).

[38] *Official Comm. of Unsecured Creditors of Midway Games v. Nat'l Amusements Inc. (In re Midway Games, Inc.)*, 428 B.R. 303, 317 (Bankr. D. Del. 2010) (an exculpatory provision "adopted pursuant to 8 Del. C. § 102(b)(7) is in the nature of an affirmative defense.") (quoting *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223–24 (Del. 1999)).

motion to dismiss.[39]  Further, Plaintiff alleges that Defendant owed fiduciary duties as both a director and an officer.[40]  The exculpation clause does not exculpate Defendant in her capacity as an officer.  Finally, certain courts do not dismiss a complaint where a non-exculpated breach of duty is pled.[41]  As set forth below, one such claim is adequately pled.

>   2.  *Plaintiff adequately pleads claims for breach of the duty of loyalty and the subsidiary element of lack of good faith, but not for the duty of care.*

In order to prove a breach of the duty of care, a plaintiff must demonstrate that the directors acted with gross negligence in failing to inform themselves of all material information and alternatives reasonably available to them before making a business decision.[42]  "To state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs."[43]  The duty of good faith "is a subsidiary element of the duty of

---

[39] *Id.* (citing *In re the Brown Schools*, 368 B.R. 394, 401 (Bankr. D. Del. 2007)).  *See also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 242 (3d Cir. 2005) ("the protections of an exculpatory charter provision appears to be in the nature of an affirmative defense.  As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6).") (internal citation omitted)).  *Giano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, Case No. 16-10202 (KG), Adv. No. 17-50662 (KG), 2018 WL 2759301, at *12 n.26 (Bankr. D. Del. 2018).

[40] Complaint ¶ 39.

[41] *In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173, 1179–80 (Del. 2015).  *See also In re Midway Games Inc.*, 428 B.R. at 317–18; *In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301, at *12.

[42] *Schmidt v. Skolas*, 706 F. App'x. 68, 74 (3d Cir. 2017) (citing *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 367 (Del. 1993)).  In the corporate context, gross negligence is defined as a fiduciary's "reckless indifference to or a deliberate disregard" of its constituents or actions outside the "bounds of reason."  *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 372 n.17 (Del. Ch. 2023) (quoting *Tomczak v. Morton Thiokol, Inc.*, Civ. A. No. 7861, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990) (citations omitted)).

[43] *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 540 (Bankr. D. Del. 2009) (quoting *Joyce v. Cuccia*, Civ. A. No. 14953, 1997 WL 257448, at *5 (Del. Ch. May, 14, 1997)).  "[T]he duty of loyalty mandates that the best interest of the corporation and

loyalty, i.e., a condition, of the fundamental duty of loyalty."[44] And "a director cannot act loyally towards the corporation unless she acts in the good faith belief that her actions are in the corporation's best interest."[45] There are three common instances where a breach of good faith may be found, (i) "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation," (ii) "where the fiduciary acts with the intent to violate applicable positive law," (iii) "or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."[46]

The following are the sum and substance of Plaintiff's allegations in the Complaint:

- Defendant failed to adequately capitalize Debtors and entered into various transactions that favored Three14 Limited and Charlotte Olympia Holdings at Debtor's expense.  Complaint ¶¶ 4, 10.

- If Defendant had not guaranteed the Lease, Debtors would not have kept the New York store open.  Complaint ¶ 27.

- Defendant caused the New York store to continue to operate, despite its unprofitability, in order to insulate herself from, or reduce her, liability under the Guaranty.  Complaint ¶ 29.

- In May 2017 Defendant entered into a sale agreement with Onward Luxury Group SpA, selling 51% of the stock in Charlotte Olympia Holdings and guaranteeing her continued employment and control over Debtors. Complaint ¶¶ 31–35.

- Defendant exercised this control in ways that benefited her personally. Complaint ¶36.

---

its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co.*, 634 A.2d at 361.

[44] *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (quoting *Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003)) (cleaned up).

[45] *Id.*

[46] *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006).

- Defendant's motivation for causing Debtor's continued operation was to bolster her personal brand. Complaint ¶ 38.

- Defendant caused Debtors to acquire large amounts of inventory from Three14 Limited without sufficient deliberation. Complaint ¶ 41.

- Defendant failed to shutter Debtor's stores when they were clearly unprofitable because, as personal guarantor of the Lease, she benefited each month Debtors made lease payments. Complaint ¶¶ 42–44.

- Because Defendant served on the boards of Three14 Limited and Charlotte Olympia Holdings, she stood to gain personally if Debtors continued to purchase inventory and continued to make payments under leases that those entities had guaranteed. Complaint ¶ 45.

- Defendant failed to make properly informed management decisions and was grossly negligent in her failure to recommend to the owners that an infusion of additional capital was required to shore up Debtors' finances. Complaint ¶ 46.

- Defendant's bad faith is evidenced by the actions she took which did not benefit the Debtors, she acted in a manner which benefited herself, Three14 Limited and Charlotte Olympia Holdings rather than the Debtors. Complaint ¶¶ 63–64.

- Despite Debtors' perilous financial condition and lack of solvency, Defendant intentionally and/or recklessly disregarded (or did not consider) the risks and consequences of undercapitalizing Debtors, purchasing excess inventory, and other actions/inaction. Complaint ¶ 69.

- Nor did Defendant consider or undertake available alternative transactions or other courses of action that would not have unduly risked or jeopardized the recovery of Debtors' creditors or Debtor's financial viability. Complaint ¶ 70.

While many if not most of these allegations are conclusory, Plaintiff states enough facts (when considered in her favor and with all reasonable inferences drawn therefrom) to state a claim for the breach of duty of loyalty and the related duty of good faith. Plaintiff alleges that Defendant caused Debtor to keep the New York store operating so that she could reduce her personal liability on her guarantee. Plaintiff also alleges that Defendant kept Debtor operating to bolster her personal brand. While scant, these facts, and the reasonable

inferences to be drawn from them, sufficiently set out a cause of action for breach of the duty of loyalty and the related duty of good faith. This is mainly because the self-interest is apparent and easy to understand.

But, there are no facts supporting the conclusory assertions that Defendant failed to properly inform herself about actions she took as a director. There are no facts to show that Defendant was recklessly misinformed or acted "outside of the bounds of reason" as a director.[47] And, no facts to identify the actual transactions/actions at issue. Accordingly, I conclude that Plaintiff has not pled a cause of action for breach of the duty of care.

### 3. *Plaintiff has not adequately pled insolvency.*

Defendant also seeks to dismiss Count II on the basis that Plaintiff has not adequately pled that Debtors were insolvent at all relevant times.[48] In the Complaint, Plaintiff alleges that Debtors were (i) unprofitable and (ii) "insolvent at all times relevant to this Complaint because the value of their assets was exceeded by the value of their liabilities."[49] In its Answering Brief,[50] Plaintiff refers the court to paragraphs 40–42 of Debtors' First Day Declaration.[51] Those paragraphs state:

---

[47] *See supra* n.42.

[48] Relying on *In re Tropicana Entertainment, LLC*, 520 B.R. 455, 471 (Bankr. D. Del. 2014), Defendant argues: "pleading that a subsidiary's director breached fiduciary duties by favoring the parent or its affiliates requires alleging that the subsidiary was insolvent or became insolvent as a result of the misconduct." Plaintiff did not challenge the need to plead insolvency.

[49] Complaint ¶¶ 23, 29.

[50] Answering Br. at 12 n.1.

[51] D.I. 14 (Declaration of William Kaye in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief). In the Complaint, Plaintiff only references the First Day Declaration; it does not point to any specific paragraphs or otherwise incorporate the document. Complaint ¶ 23. Assuming one should incorporate another document in a complaint, it is unhelpful to incorporate

40. In July 2017, OLG SpA bought a controlling interest in [Charlotte Olympia] Holdings, and thereafter initially supported the Debtors through intercompany loans which remain outstanding. Recently OLG SpA and Three14 Ltd. have indicated to the Debtors that they are no longer willing to fund the Debtors' operations due to the historical unprofitably of the Debtors and the challenging brick and mortar retail environment generally.

41. Accordingly, a critical funding source that helped the Debtors continue to operate despite unprofitability is no longer available, necessitating these filings.

42. The Debtors have lost money each year they have been in operation. In 2014, the Debtors had losses of $1,719,317 on a consolidated basis. These losses continued in 2015, 2016, and 2017, with losses on a consolidated basis of $1,829,299, $4,323,594, and $6,054,499, respectively.

Defendant argues that these allegations relate to the petition date and that prior to the petition date Debtors were funded by non-debtor affiliates suggesting that "there were reasonable prospects that the business of Debtors could be continued."[52] Defendant also argues that to properly plead insolvency, Plaintiff must also "appropriately value" Debtors' assets at a going concern value and account for parent's financial support.[53] In response, Plaintiff contends that insolvency was adequately pled and is otherwise a factual issue "not appropriate for resolution in a motion to dismiss" and that it is "not required to include precise calculations evidencing balance sheet insolvency."[54]

---

the entire document rather than the specific relevant paragraphs." *In re F-Squared Investment Mgmt., LLC*, 2019 WL 4261168, at *10 (Bankr. D. Del. 2019).

[52] Opening Br. at 12 (quoting *Teleglobe USA, Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 392 B.R. 561, 600 (Bankr. D. Del. 2000)).

[53] Opening Br. at 11-12.

[54] Answering Br. at 11 (first quoting *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 858 (Bankr. D. Del. 2018) (quoting *Zazzali v. Mott (In re DBSI, Inc.)*, 445 B.R. 344, 349 (Bankr. D. Del. 2011)) then quoting *Id.* (quoting *Forman v. HBK Master Fund L.P. (In re Glencoe Acquisition, Inc.)*, Case No. 12-12071 (KG), Adv. No. 14-50464 (KG), 2015 WL 3777972 at *4 (Bankr. D. Del. June 16, 2015))).

It is true that insolvency is a factual determination that will not be resolved on a motion to dismiss and whether Debtors were insolvent will not be resolved in the context of this motion. That, however, does not negate Plaintiff's obligation to adequately plead insolvency rather than make conclusory statements.[55] Plaintiff's allegation that Debtors were "insolvent at all times relevant to this Complaint because the value of their assets was exceeded by the value of their liabilities" is too conclusory, particularly because Plaintiff does not place specific dates on alleged breaches of fiduciary duties.[56] Further, Plaintiff provides no relevant hard data to support the conclusory statement. Moreover, the allegations of unprofitability, without more, do not show insolvency. A debtor can be unprofitable and yet solvent. Accordingly, I cannot draw a reasonable inference from the allegations in the Complaint or the specified statements in the First Day Declaration that Debtors were insolvent at the times of any alleged breaches of fiduciary duty.

Accordingly, Count II will be dismissed. But, as Defendant's reasons for seeking a dismissal with prejudice really pre-judge factual issues, I will give Plaintiff the opportunity to amend the Complaint.

---

[55] *Twombly*, 550 U.S. at 545 ("[A] formulaic recitation of a cause of action's elements will not do.").

[56] *See Miller v. Welke (In re United Tax Group, LLC)*, Case No. 14-10486 (LSS), Adv. No. 16-50088 (LSS), 2016 WL 7235622, at *4 (Bankr. D. Del. Dec. 13, 2016) (plaintiff's allegations that "[t]he Debtor's records, including the Debtor's tax returns, suggest that the Debtor was insolvent on a "balance sheet" basis at the beginning and end of calendar year(s) [sic] 2012" is too conclusory as to transfers made in 2012).

**CONCLUSION**

For the reasons stated above, a separate order will be entered dismissing both counts

of the Complaint without prejudice and with leave to amend.


Dated:  April 14, 2023

Laurie Selber Silverstein
United States Bankruptcy Judge