## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PINKTOE TARANTULA LIMITED, *et al.*, | Case No. 18-10344 (LSS) |
| Debtors. | Jointly Administered |
| PINKTOE LIQUIDATION TRUST, | |
| Plaintiff, | |
| v. | |
| CHARLOTTE OLYMPIA DELLAL, | Adv. Pro. No. 20-50597 (LSS) |
| Defendant. | |

### MEMORANDUM AND ORDER

Before the Court is Defendant's motion to dismiss ("Motion"[1]) Count II of Plaintiff's

Amended Complaint[2] under Rule 12(b)(6) for failure to state a claim.  For the reasons set

forth below, it will be granted in part and denied in part.  Plaintiff's request for leave to

amend will be denied as procedurally improper.

---

[1] Def.'s Partial Mot. to Dismiss, ECF No. 21.

[2] Am. Compl., ECF No. 19.

**Background[3]**

On February 17, 2018, Pinktoe Tarantula Limited ("Pinktoe"), Desert Blonde

Tarantula Limited ("Desert Blonde") and Red Rump Tarantula Limited ("Red Rump" and

collectively with Pinktoe and Desert Blonde, "Debtors") each filed for chapter 11 relief in

the United States Bankruptcy Court for the District of Delaware.[4]  On February 6, 2019,

Debtors' Plan of Liquidation ("Plan") was confirmed.[5]  Pursuant to the Plan, the Trust was

formed and assumed the right to assert Debtors' claims.[6]

**Original Complaint**

Plaintiff commenced this adversary proceeding on May 11, 2020.[7]  Plaintiff's initial

Complaint alleged two counts: (I) avoidable preferences pursuant to 11 U.S.C. §§ 547 & 550

and (II) breach of fiduciary duties.[8]  On July 28, 2020, Defendant filed her first motion to

dismiss.[9]  I considered the briefing and granted Defendant's motion but also granted

Plaintiff leave to amend.[10]

---

[3] This section contains aspects of both the procedural background and the factual background.  As required on a motion to dismiss, any facts recited come from the Amended Complaint.  A court is not required to make findings of fact or conclusions of law on a motion to dismiss under Fed. R. Civ. P. 12, made applicable to Fed. R. Bankr. P. 7012, and I make none.  *See* Fed. R. Civ. P. 52(a)(3) made applicable by Fed. R. Bankr. P. 7052.

[4] Am. Compl. ¶¶ 13, 21.

[5] Am. Compl. ¶ 14.

[6] *Id.*

[7] Compl., ECF No. 1.

[8] *Id.* ¶¶ 50–73.

[9] Def.'s Mot. to Dismiss, ECF No. 8.

[10] Order, ECF No. 18.

As relevant here, I held that Plaintiff's claims for breaches of the duty of loyalty and the subsidiary duty of good faith in Count II were adequately pled.[11]  However, I held that Plaintiff only provided conclusory assertions in support of its duty of care claims.[12]  I further found that no facts were provided identifying the transactions/actions at issue under a duty of care claim.[13]  Consequently, I concluded that Plaintiff failed to plead a breach of the duty of care.[14]

I also found that the Complaint contained only conclusory statements regarding insolvency.[15]  In coming to that conclusion, I stated that Plaintiff provided no hard data to support its assertions of insolvency and held that allegations of Debtors' unprofitability alone are insufficient to establish insolvency.[16]  I also held that Plaintiff's statement that Debtors were "insolvent at all times relevant to this Complaint" was particularly unhelpful because Plaintiff had not identified the dates of the alleged breaches of fiduciary duties.[17]  Because of the pleading deficiencies regarding the duty of care and insolvency, I dismissed Count II, but Plaintiff was granted leave to amend.[18]

---

[11] Mem. 15–18, ECF No. 17.

[12] *Id.* at 18.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 19–20.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 20–21.

**Amended Complaint**

Plaintiff filed its Amended Complaint on May 29, 2023.  The salient allegations made in the initial Complaint remain unchanged.[19]  The relevant substantive additions in the Amended Complaint are:

- As to insolvency:

    o Pinktoe was initially capitalized not with equity but through debt financing provided by Three14, and no equity was ever raised by, or contributed to Pinktoe;

    o Pinktoe was never profitable but instead lost money from 2011 forward;

    o In 2015, Pinktoe had income of negative $1,719,317;

    o Pinktoe lost $2.6 million between April 1, 2017 and November 30, 2017;

    o As of November 17, 2017, Pinktoe had assets of $2,482,400 and liabilities of $13,853,891; and

    o On the Petition Date [February 17, 2008], Pinktoe had assets of $2,480,447 and liabilities of $11,458,730.27.  *See* Am. Compl. ¶ 39.

- As to Defendant's breach of the duty of care:

    o In causing the Debtors to acquire large amounts of inventory, Defendant failed to educate herself on the risks associated with these transactions and the impact those transactions would have on the Debtors and their creditors. *Compare* Am. Compl. ¶ 43 *with* Compl. ¶ 41.

    o In failing to close the New York store, Defendant failed to appraise herself of the risks associated with continued operations.  *Compare* Am. Compl. ¶ 45 *with* Compl. ¶ 43.

    o Defendant did not retain proper advisors to inform herself of the risks of continuing to operate the stores or of acquiring large amounts of inventory. *See* Am. Compl. ¶ 46.

---

[19] For a summary of Plaintiff's allegations relating to Defendant's breach of fiduciary duties, see Mem. 16–17.

o   Defendant did not hold adequate board meetings to consult with management and advisors regarding the risks of continued operations. *See* Am. Compl. ¶ 47.

o   Defendant failed to effectively monitor and oversee the Debtors' management. *See* Am. Compl. ¶ 48.

o   Defendant did not otherwise inform herself regarding the losses experienced by the Debtors and failed to evaluate alternatives to continued operations. *See* Am. Compl. ¶ 49.

o   If Defendant had properly informed herself of the risks of continued operations, she would realize that Debtors' financial condition was harmed by continued operations. *See* Am. Compl. ¶ 50.

Defendant filed the Motion on June 12, 2023 together with her opening brief.[20]

Plaintiff's answering brief was filed on June 26, 2024.[21]  Defendant's reply brief was filed on

July 3, 2023.[22]  The matter is ripe for decision.

**Jurisdiction**

Subject matter jurisdiction exists under 28 U.S.C. § 1334(b).  Plaintiff asserts that this

matter is a core proceeding under 28 U.S.C. § 157(b)(2) and now consents to entry of a final

order if it is later determined that the court cannot enter a valid final order absent consent of

the parties.[23]  In my first Memorandum, I noted that Defendant did not characterize the

counts as core or non-core and did not state whether she consented to entry of final orders

by the bankruptcy court.  Notwithstanding that observation, in her latest set of filings,

Defendant still takes no position on these issues.  Accordingly, I now conclude that

---

[20]  Opening Br. in Supp. of Def.'s Partial Mot. to Dismiss, ECF No. 22 ("Opening Br.").

[21]  Pl.'s Resp. in Opp'n to Def. Charlotte Olympia Dellal's Partial Mot. to Dismiss, ECF No. 23 ("Answering Br.").

[22]  Reply Br. in Supp. of Def.'s Mot. to Dismiss, ECF No. 24.

[23]  Am. Compl. ¶ 17; *see also* Del. Bankr. L. R. 7008-1.

Defendant has waived any objection to entry of final orders in this adversary proceeding by the bankruptcy court.[24]

**Legal Standard**

A motion to dismiss for failure to state a claim is governed by Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).[25]  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[26] Correspondingly, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide detailed factual allegations; nonetheless, to show "entitle[ment] to relief," a complaint must contain more than "labels and conclusions" or "a formalistic recitation of the elements of the cause of action."[27]  So, to survive a motion to dismiss, a complaint must contain sufficient factual allegations that, when accepted as true, plausibly support a claim for relief.[28]

In determining whether a plausible claim has been pled, I must accept all factual allegations as true.[29]  This presumption, however, does not apply to legal conclusions.[30]

---

[24] Del. Bankr. L. R. 7012-1.

[25] *Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Ent., LLC)*, 520 B.R. 455, 466–67 (Bankr. D. Del. 2014).

[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[27] *Id.*; Fed. R. Civ. Proc. 8(a)(2).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[29] *See id.*

[30] *Id.*

**Discussion**

    *1. Plaintiff adequately pleads claims for breach of the duty of care.*

    Defendant seeks dismissal of Count II asserting that Plaintiff has only made conclusory statements in support of its breach of the duty of care claim. Defendant argues that Plaintiff's new allegations simply parrot the duty of care standards. Defendant argues that Plaintiff's original complaint was dismissed for lack of well-pled facts, so Plaintiff's failure to properly correct this deficiency in its Amended Complaint warrants dismissal.

    Plaintiff responds that a claim for breach of the duty of care must plausibly demonstrate gross negligence. Plaintiff argues that the additional facts it pled, such as failure to retain advisors or to hold adequate board meetings, are factual allegations that tend to demonstrate the gross negligence necessary to state the claim.

    In my previous ruling, I stated that the Plaintiff must demonstrate that the Defendant acted with gross negligence to prove a breach of the duty of care.[31] I noted many of the Plaintiff's allegations were conclusory. I concluded that the allegations that Defendant kept Debtors operational to both bolster her personal brand and reduce her liability as a guaranty were sufficiently factual to permit inferences of breaches of the duties of loyalty and good faith.[32] Contrarily, I found that no facts were pled allowing the inference that Defendant was grossly negligent.[33] I also found that no factual allegations identified the transactions/actions at issue.[34]

---

[31] Mem. 15.

[32] *Id.* at 17–18.

[33] *Id.* at 18.

[34] *Id.*

Plaintiff has now inserted additional factual allegations into the Amended Complaint. Specifically, the Amended Complaint now contains averments that Defendant did not retain advisors to inform her of the risks of continued operations or of the continued transactions with Three14 Limited.[35] Further, Plaintiff alleges that Defendant failed to hold appropriate board meetings regarding these risks and did not inform herself regarding the losses incurred by continued operations.[36] Plaintiff also alleges that had Defendant properly informed herself, she would have realized that continued operations harmed Debtors.[37]

While it is admittedly a close call, I conclude that the new allegations, taken together with those contained in the original Complaint, sufficiently plead a claim for breach of the duty of care. As recognized previously, for a duty of care claim to survive, Plaintiff must plead facts giving rise to an inference of gross negligence.[38] That Defendant held inadequate board meetings and failed to retain advisors are facts—albeit scarce—not conclusory allegations. When taken in the light most favorable to the Plaintiff, these additional allegations permit the reasonable inference that Defendant was grossly negligent in continuing to operate Debtors' New York stores. Moreover, those allegations reference the actions/transactions that give rise to the breach of the duty of care, namely the continued operation of the New York store and the continued acquisition of large amounts of

---

[35] *See* Am. Compl. ¶ 46; *see id.* ¶¶ 43–45.

[36] *Id.* ¶¶ 47–49.

[37] *Id.* ¶ 50.

[38] *See* Mem. 15.

inventory from an affiliate.[39]  Accordingly, I conclude that Plaintiff has remedied the deficiencies found in its original Complaint.

> ### 2. *Plaintiff adequately pleads insolvency, but only for Pinktoe, and only for the three-month period preceding the bankruptcy filing.*

Defendant also seeks to dismiss Count II for failure to adequately plead insolvency on several bases.  Defendant argues that Plaintiff's new allegations discuss only the financial condition of Pinktoe and ignore the other two Debtors.  Defendant argues that Plaintiff fails to define the time period during which Plaintiff claims Debtors were insolvent.  Defendant argues that the new allegations focus primarily on Pinktoe's historical unprofitability rather than prepetition insolvency.  Defendant argues that the small three-month window of insolvency arguably adequately pled is unhelpful because Plaintiff has not identified breaches of fiduciary duty during that time period.  Lastly, Defendant argues that while Debtors' parent company was committed to funding Debtors, Debtors could not be considered insolvent.

Plaintiff responds that the pleading standard does not require allegations of the exact date of insolvency; rather, facts supporting a reasonable inference of insolvency are sufficient.  Plaintiff points to its allegations of Pinktoe's consistent losses and initial debt capitalization.[40]  Plaintiff also points to specific dates in the Amended Complaint on which Pinktoe's assets were far outweighed by its liabilities.[41]  Finally, Plaintiff argues that while

---

[39] *See* Am. Compl. ¶¶ 43–44.

[40] *Id.* ¶ 39.

[41] *Id.*

the facts alleged only demonstrate insolvency for Pinktoe, Debtors were affiliated and all driven to insolvency by the same breaches of fiduciary duty.[42]

In dismissing the original Complaint, I agreed with Plaintiff that insolvency is a factual issue to be determined later; nevertheless, I held that this did not relieve Plaintiff of its obligation to plead insolvency through factual allegations rather than conclusory statements.[43] I held that a statement that Debtors were insolvent, without hard data to support that conclusion or specific dates, was insufficient to meet the pleading standard.[44] I also held that allegations of unprofitability, without more, do not demonstrate insolvency because businesses can be unprofitable and yet solvent.[45]

In the Amended Complaint, Plaintiff added a single paragraph addressing these issues.[46] In paragraph 39, Plaintiff alleges:

- o Pinktoe was initially capitalized not with equity but through debt financing provided by Three14, and no equity was ever raised by, or contributed to Pinktoe;
- o Pinktoe was never profitable but instead lost money from 2011 forward;
- o In 2015, Pinktoe had income of negative $1,719,317;
- o Pinktoe lost $2.6 million between April 1, 2017 and November 30, 2017;
- o As of November 17, 2017, Pinktoe had assets of $2,482,400 and liabilities of $13,853,891; and

---

[42] Answering Br. 9-10.

[43] Mem. 20.

[44] *Id.*

[45] *Id.*

[46] *See* Am. Compl. ¶ 39.

  o  On the Petition Date [February 17, 20018], Pinktoe had assets of $2,480,447 and liabilities of $11,458,730.27.

As is evident from a review, Plaintiff's new allegations concern only Pinktoe. Plaintiff's utter failure to plead additional (or any) facts showing the financial condition of Desert Blonde and Red Rump results in the continued finding that insolvency is inadequately pled for those Debtors. Plaintiff suggests that pleading Pinktoe's insolvency should suffice because all three Debtors were affiliates, improperly managed and filed bankruptcy together. Plaintiff, however, cites no case for ignoring the corporate separateness of these entities when pleading insolvency, or otherwise.

With respect to Pinktoe, I conclude that Plaintiff adequately pleads insolvency for the three months prior to bankruptcy—November 17, 2017 to February 17, 2018. The last two bullet points present specific dates on which Pinktoe's assets were substantially less than its liabilities. The two snapshot dates factually allege that between November 2017 and February 2018, Pinktoe's liabilities were almost 500% greater than Pinktoe's assets. Insolvency exists when "the sum of such entity's debts is greater than all of such entity's property."[47] From these factual allegations, I may reasonably infer that Pinktoe was insolvent from November 17, 2017 onward.

But, there are no similar allegations for the period prior to November 17, 2017. Instead, the first four bullet points continue to focus on Pinktoe's history of unprofitablilty.

---

[47] *See Off. Comm. Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301, 306–07 (Bankr. D. Del. 2005); *cf.* 11 U.S.C. § 101(32). Defendant's reliance on *In re Teleglobe* is unpersuasive because the procedural posture was that of a discovery dispute with an evidentiary hearing rather than a motion to dismiss, where the court must accept well-pled factual allegations. *See Teleglobe USA, Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 392 B.R. 561 (Bankr. D. Del. 2008).

Adding additional new facts on this topic does not move the needle. Further, Plaintiff's allegation that Pinktoe was initially capitalized only with debt from Three14 Limited, an affiliated entity, is not sufficient to plead insolvency when William Kaye also states that Three14 Limited was a "critical funding source" that only "recently" indicated it would no longer fund debtors.[48] Finally, Plaintiff's reliance on *Trolls Communications,* is misplaced: there, the court relied on specific facts including a going concern business qualification and allegations regarding a negative net worth.[49] There are no such factual assertions here.

Defendant also argues that even if Plaintiff has pled insolvency, the Amended Complaint is still deficient because Plaintiff has not clearly pled when the alleged breaches of fiduciary duty occurred. Plaintiff has alleged, however, that Defendant's misconduct involved continuing operations against Debtors' best interests in an ill-advised manner and making decisions based on self-interest. It can be inferred that this conduct occurred during this three-month period from November 17, 2017 through February 17, 2018 because

---

[48] Decl. of William Kaye in Supp. of the Debtors' Chapter 11 Pets. & Reqs. for First Day Relief ¶¶ 40–41, No. 18-10344, ECF No. 14 ("In July 2017, OLG SpA bought a controlling interest in Holdings, and thereafter initially supported the Debtor though intercompany loans which remain outstanding. Recently, OLG SpA and Three14 Ltd. have indicated to the Debtors that they are no longer willing to fund the Debtors' operations due to historical unprofitability of the Debtors and the challenging brick and mortar retail environment generally. Accordingly, a critical funding source that helped the Debtors continue to operate despite unprofitability is not longer available, necessitating these filings."). Mr. Kaye's declaration is referenced in paragraph 24 of the Amended Complaint.

[49] *Jospeh v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 123–24 (Bankr. D. Del. 2008). (The complaint alleged: "According to Troll's internal financial statements, as of June 30, 2002, Communications' accounts payable and other liabilities were $12.8 million. The tangible net worth of Communications was valued at a negative $13.1 million. The going concern business qualification given by PWC rendered the company's goodwill valueless, making tangible net worth the guidepost for determining the company's insolvency. By this standard, and by the standard of the company's cash flow, Troll was insolvent on June 30, 2002 . . . . Troll was never able to climb out of its insolvency right through the time it filed its bankruptcy petition. Additional funds were provided by its shareholders, but those funds could only be used to cover some of the company's losses, they were not sufficient to make the company solvent..").

Debtors were still operating when they sought bankruptcy relief. Defendant's reliance on *Residential Funding* is inapposite as the court found the pleadings insufficient because the complained-of conduct was not within the time period for which insolvency was adequately pled.[50] Here the complained-of action and inaction in keeping the stores operating and engaging in self-interested transactions may be inferred to have been ongoing while Debtors were operating. So, Defendant's argument that the "relevant" time period has not been pled sufficiently—as it relates to this three-month period—fails.

In sum, Plaintiff has failed to plead insolvency for Desert Blonde and Red Rump. And while Plaintiff has successfully amended its Complaint to plead insolvency for Pinktoe, such pleadings only give rise to an inference from November 17, 2017 onward. Accordingly, Defendant's motion to dismiss Count II will be granted with regards to Desert Blonde and Red Rump, and to Pinktoe regarding claims before November 17, 2017. Defendant's motion will otherwise be denied.

   *3. Plaintiff will not be given leave to amend at this time.*

Having determined that Count II must be dismissed in part, I next turn to Plaintiff's request in the conclusion of its Answering Brief for leave to amend further. Leave to amend is governed by Rule 15(a)(2) which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."[51] Courts are directed to "freely give leave when justice so requires."[52] The Third Circuit has instructed that courts should

---

[50] *Residential Funding Co. v. InterLinc Mortg. Servs., LLC (In re: RFC & ResCap Liquidating Tr. Litig.)*, No. 13-cv-3451, 2017 WL 1483374, at *7 (D. Minn. Apr. 25, 2017).

[51] Fed. R. Civ. Proc. 15(a)(2). Civil Rule 15 is made applicable to this proceeding by Fed. R. Bankr. Proc. 7015.

[52] Fed. R. Civ. Proc. 15(a)(2).

liberally allow amendments.[53] This does not, however, relieve plaintiffs of the requirement to follow proper procedure. "Where a request for leave to file an amended complaint is simply imbedded within an opposition memorandum, the issue has not been raised properly."[54] Here, Plaintiff's request for leave to amend appears at the end of its Answering Brief and provides no grounds upon which amendment should be granted.

I have in the past, including in this adversary proceeding, granted leave to amend notwithstanding a procedural infirmity.[55] But, current circumstances counsel that Plaintiff be required to file a motion. This is a relatively simple complaint with one defendant and two counts. In preparing its amended complaint, Plaintiff had the benefit of a memorandum decision explaining the original complaint's deficiencies.[56] Presumably, Plaintiff responded with its best version of a complaint. It is unclear what facts Plaintiff will now plead that it could not have pled previously. In these circumstances, I am denying the request for leave to amend on procedural grounds.[57]

---

[53] *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 642 B.R. 155, 171–72 (Bankr. D. Del. 2022).

[54] *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999); *see also In re Our Alchemy, LLC*, 642 B.R. at 172 (citing same).

[55] *See* Order, ECF No. 18.

[56] *See* Mem.

[57] I make no findings regarding whether Plaintiff can meet the requirements of a request under Rule 15.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

For the foregoing reasons, Defendant's Partial Motion to Dismiss is:

1. **GRANTED** so as to preclude claims for breach of fiduciary duty under Count II related to Desert Blonde and Red Rump.

2. **GRANTED** as to Pinktoe so as to preclude claims for breach of fiduciary duty under Count II for the period prior to February 17, 2017.

   **IT IS FURTHER ORDERED THAT** Plaintiff's request for leave to amend is **DENIED** as procedurally improper.

Dated: March 13, 2024

Laurie Selber Silverstein
United States Bankruptcy Judge